**OWENS–CORNING FIBERGLAS CORPORATION, Relator,**

v.

**The Honorable Neil CALDWELL, Judge of the 23rd District Court of Brazoria County, Texas, Respondent.**

**OWENS–CORNING FIBERGLAS CORPORATION, Wright, Robinson, McCammon, Osthimer & Tatum, and Richard K. Hines, Relators,**

v.

**The Honorable Neil CALDWELL, Judge of the 23rd District Court of Brazoria County, Texas, Respondent.**

Nos. 01–91–00681–CV, 01–91–00748–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 21, 1991.

Frank M. Bean, Houston, for relators.

Kevin F. Risley, Ruby Sondock, Carolyn Marks Johnson, Houston, for respondent.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION

SAM BASS, Justice.

In the first of these two proceedings (01–91–00681–CV), relator, Owens–Corning Fiberglas Corporation (OCF), seeks mandamus relief from respondent's, Judge Neil Caldwell's, order in the underlying causes [1] requiring it to produce for in camera inspection (1) "costs of services for counsel" documents, and (2) "reserves for asbestos claims losses" documents. Additionally, OCF asks this Court (1) to direct Judge Caldwell to modify another order to provide that an outstanding sanction of $320,000 in attorneys' fees be due and payable at or after the time of final judgment, and (2) to remove the remaining sanctions issues from the master in chancery. No response has been filed on behalf of Judge Caldwell in this first proceeding.

In the second proceeding (01–91–00748–CV), OCF, the law firm of Wright, Robinson, McCammon, Osthimer & Tatum (Wright, Robinson), and attorney Richard K. Hines (Hines) [2] seek mandamus relief from a third order of Judge Caldwell in the underlying causes, reimposing fines against them, respectively, of $2,656,160, $250,000, and $50,000.

1. *Heathman v. Owens–Corning Fiberglas Corporation,* No. 87–C–1934 (Dist.Ct. of Brazoria County, 23rd Dist. of Texas) and *Searls v. Owens–Corning Fiberglas Corporation,* No. 88–C–0615 (Dist.Ct. of Brazoria County, 23rd Dist. of Texas).

2. Wright, Robinson represents OCF in the underlying causes and Hines is a member of the firm.

As detailed at the end of this opinion, the writ of mandamus is conditionally granted with respect to the documents ordered produced for in camera inspection and to the deferral of the attorneys'-fees sanction; the writ of mandamus is granted with respect to the reimposition of monetary fines against OCF, Wright, Robinson, and Hines; all further relief is denied.

*History of these Proceedings*

These proceedings are not the first time these parties have come before this Court. We begin by reviewing the events that preceded these mandamus petitions.

In an amended sanctions order dated January 11, 1991 (the amended sanctions order), Judge Caldwell found that OCF, Wright, Robinson, and Hines had abused the discovery process and obstructed the judicial process in the underlying causes. The amended sanctions order fined them, respectively, $2,356,160, $250,000, and $50,-000. The order also directed OCF to pay $320,000 in attorneys' fees to the plaintiffs' attorneys.[3]

OCF, Wright, Robinson, and Hines sought mandamus relief from this Court, arguing that TEX.R.CIV.P. 215(3) does not allow monetary fines and that the amended sanctions order imposing them was void. With respect to attorneys' fees, OCF argued that they could be imposed only after notice and hearing and that, while a hearing had been held before the master in chancery, no de novo evidentiary hearing had been held before the trial court.

We held that rule 215(3) allowed imposition only of the sanctions specifically mentioned therein. *Owens–Corning Fiberglas Corp. v. Caldwell,* 807 S.W.2d 413, 415 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding [leave denied]).[4] Because fines are not mentioned in rule 215(3), we held the portion of Judge Caldwell's amended sanctions order assessing fines against the relators void. *Id.* at 416. OCF could cite no legal authority for its conclusion that an attorneys'-fees sanction is void without a de novo evidentiary hearing before the trial court (after a hearing before the master). Therefore, we found OCF had not established its right to mandamus concerning the attorneys'-fees sanction. *Id.* at 417. We conditionally granted the petition for writ of mandamus in part and ordered Judge Caldwell to vacate the portion of his amended sanctions order assessing fines. *Id.*

On March 21, 1991, OCF filed a petition for writ of mandamus in the Texas Supreme Court, asking it to vacate only the attorneys' fees sanction under the amended sanctions order. The supreme court stayed the amended sanctions order "regarding the payment of sanctions and attorneys fees," pending disposition of the motion for leave to file the petition for writ of mandamus. On June 19, 1991, the supreme court vacated its stay and denied leave to file OCF's petition for writ of mandamus, stating in its per curiam opinion:

In this original mandamus proceeding relator seeks review of sanctions imposed by respondents [sic] for abuse of discovery. We believe that the trial court should have the opportunity to reconsider *the rulings of which relator complains in this proceeding* in light of our opinion today in *Braden v. Downey,* 811 S.W.2d 922 (Tex.1991, orig. proceeding).[5] Accordingly, we vacate our order staying proceedings and deny leave to file this petition for writ of mandamus, without addressing its merits and without prejudice to relator again requesting relief from the court of appeals and this Court after the trial court has had an opportunity to reconsider its rulings.

(Emphasis added.)

On June 25, 1991, OCF moved the trial court to vacate the fines in the amended

---

3. OCF was ordered to pay attorneys' fees of $160,000 each to the plaintiffs' attorneys in the underlying causes, Robert E. Ballard and Lawrence Madeksho.

4. The opinion issued on March 20, 1991. The Texas Supreme Court denied leave to file OCF's petition for writ of mandamus on June 19, 1991.

5. In *Braden,* the supreme court recognized the right of the sanctioned party to defer payment of severe sanctions until an appealable judgment is rendered. *Id.* at 929.

sanctions order, as directed by this Court in *Owens–Corning*, and to provide that the attorneys'-fees sanction be made payable only after a final judgment, in accordance with *Braden*. In their response to OCF's motion, we understand the plaintiffs to be suggesting that the trial court obtain from OCF records showing its counsel costs. The plaintiffs state the records appear relevant in assessing the amount of the attorneys'-fees sanction. They made no suggestion concerning information on the asbestos claims losses reserves. However, the plaintiffs made no motion to discover any of these documents, nor was there any indication that the documents would be turned over to the plaintiffs.

On July 8, 1991, Judge Caldwell ordered OCF to provide the following within 30 days for in camera inspection by the master (the July 8 order):

1. Copies of all documents (whether checks, statements, bills, payments, or credit arrangements) showing the costs of services for counsel representing OCF in the underlying causes, including the 11 law firms and attorneys filing pleadings on behalf of OCF ("the costs of services for counsel" documents); and

2. Copies of any current financial statement, annual report, or other report or document showing the reserves set aside or the estimate of future costs of meeting projected losses from asbestos claims and the effect of those projections on OCF's health ("the reserves for asbestos claims losses" documents).

Judge Caldwell stated in a letter to all counsel of record that he needed the information "before I can make the findings required by *Braden v. Downey* as to Defendant OCF's ability to respond with monetary sanctions."

On July 12, 1991, OCF moved the trial court to vacate the monetary fines assessed against it under the amended sanctions order. On July 16, OCF moved the trial court to reconsider or modify the July 8 order, stating that the information was irrelevant and called for production of documents protected by the attorney-client and work product privileges. OCF also asked the trial court to remove the master in chancery from the issues in the July 8 order. The trial court took no action on OCF's motions of June 25 and July 12 and 16. On August 5, OCF moved this Court for leave to file a petition for writ of mandamus in the first proceeding, which this Court granted on August 6. We also stayed the July 8 order.

On August 12, 1991, Judge Caldwell reconsidered his amended sanctions order without notice or hearing, and vacated the fines against OCF, Wright, Robinson, and Hines. He then reimposed fines of $2,356,-160 against OCF, $250,000 against Wright, Robinson, and $50,000 against Hines, and attorneys' fees of $320,000 against OCF, all under TEX.R.CIV.P. 13, 215(2)(b) (the substitute orders). On August 20, 1991, OCF, Wright, Robinson, and Hines sought mandamus relief in this Court from the substitute orders, and Judge Caldwell stayed the substitute orders pending the outcome of the second mandamus proceeding.

■ We recognize that ordinarily the right of appeal is an adequate remedy for review of discovery sanctions. *Braden*, 811 S.W.2d at 928; *Street v. Second Court of Appeals*, 715 S.W.2d 638, 639 (Tex.1986, orig. proceeding); TEX.R.CIV.P. 215(2)(b)(8). However, we granted leave to file a petition for writ of mandamus regarding the July 8 order and the substitute orders because of their impact on our March 20, 1991, conditional writ of mandamus. We believe these circumstances sufficiently extraordinary to warrant our intervention now so that future proceedings of the trial court may be conducted in accordance with the Texas Rules of Civil Procedure and the pronouncements of this Court and the Texas Supreme Court.

*The Substitute Orders (cause number 01–91–00748–CV)*

OCF, Wright, Robinson, and Hines assert that the substitute orders were issued in defiance of this Court's March 20, 1991, conditional grant of mandamus. They also argue the substitute orders are void or an abuse of discretion based on various other grounds, which we do not find necessary to

address. The real parties in interest, on behalf of Judge Caldwell, imply that our March 20, 1991, conditional grant of mandamus is no longer effective because, since that decision, there has been a clarification of the law, and under the Texas Supreme Court's most recent ruling in *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991, orig. proceeding), monetary sanctions are available under rule 215(3). They also suggested at oral argument that Judge Caldwell's failure to comply with our conditional grant of mandamus was the result of conflicting mandates from this Court and the supreme court. Finally, they argue that mandamus should be denied for various reasons, which we do not find necessary to address.

The brief of the real parties in interest states that under *TransAmerican Natural Gas Corp.* and *Braden,* the supreme court has held that fines may be imposed under rule 215(3), contrary to this Court's holding in our March 20 opinion. They rely on Justice Gonzalez's concurring opinion in *TransAmerican.* In his opinion, Justice Gonzalez discussed guidelines for imposing sanctions. Among other things, he stated that the authority of a trial judge to assess a monetary fine under rule 215(3) as a sanction for abuse of the discovery process was disputed in *Owens–Corning,* but that the supreme court had held in *Braden* that a trial judge did have such authority. 811 S.W.2d at 921 n. 3 (Gonzalez, J., concurring).

The sanctions imposed in *TransAmerican* were the striking of the plaintiff's pleadings and dismissal of its action. 811 S.W.2d at 914. The trial court did not specify what provision of rule 215 it relied upon. *Id.* at 916. No monetary fines were assessed. The majority found that either rule 215(2)(b)(5) or rule 215(3) was applicable to the trial court's action. *Id.* However, the majority stated that under either paragraph, sanctions must be "just," and proceeded to consider whether the sanctions were just. *Id.* at 917. The majority had no reason to consider, and did not consider, if monetary fines were permissible under rule 215(3).

In *Braden,* the trial court directed Braden to pay a monetary sanction of $10,000 to the party seeking discovery. 811 S.W.2d at 924. The trial court imposed the sanction under either rule 215(2)(b) or rule 215(3). 811 S.W.2d at 928, 930 n. 7. However, the supreme court did not address the appropriateness of monetary sanctions under rule 215(3). *Id.* at 930. It did hold that monetary sanctions unrelated to attorney fees were generally authorized under rule 215(2)(b). *Id.*

We find no authority for the assertion of the real parties in interest that the Texas Supreme Court has held that fines may be imposed as sanctions under rule 215(3).

When the supreme court stayed the amended sanctions order on March 21, 1991, "regarding the payment of sanctions and attorneys fees," it arguably stayed any action of the trial court with respect to both the attorneys' fees *and* the monetary fines, assuming that the term "sanctions" referred to the monetary fines and not only the sanction of attorneys' fees. However, OCF had presented only the attorneys'-fees portion of the amended sanctions order to the supreme court in its motion for leave to file a petition for writ of mandamus. Because the issue of monetary fines was not taken before the supreme court, it could not stay that portion of the amended sanctions order. *See, e.g., Evans v. Evans,* 186 S.W.2d 277, 279 (Tex.Civ.App.—San Antonio 1945, no writ) (stay of proceedings directed to discretion of trial court, which should consider *matters presented by application,* determine fact issues by hearing evidence, and enter order it deems advisable) (emphasis added). In any event, if the trial court was under "dual mandates," i.e., a stay of its amended sanctions order from the supreme court and a conditional grant of mandamus from this Court to vacate the monetary fines portion of the same order, any conflict between the stay order and the conditional grant of mandamus ended on June 19, 1991, when the supreme court vacated its stay.

We further note that, even if the supreme court's June 19, 1991, per curiam opinion can be interpreted as a directive to

the trial court to reconsider the amended sanctions order, the directive is limited to reconsideration of *"the rulings of which relator complains in this proceeding."* The only ruling of which OCF complained in the supreme court related to the attorneys'-fees sanction.

We find no basis for the suggestion by the real parties in interest that Judge Caldwell (certainly after June 19, 1991) was under conflicting directives from this Court and the supreme court, and, therefore, was unable to comply with our March 20, 1991, conditional grant of mandamus.

■ The granting of a writ of mandamus by a court of appeals may not be appealed to the supreme court, but is reviewable by writ of mandamus filed in the supreme court. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 n. 1 (Tex.1991). Neither Judge Caldwell, nor the real parties in interest, nor the relators have sought mandamus review of our March 20, 1991, decision conditionally granting a writ of mandamus and ordering Judge Caldwell to vacate the monetary fines imposed by the amended sanctions order. Our March 20, 1991, decision still stands.

■ Accordingly, we consider whether Judge Caldwell complied with our March 20 decision when he vacated the fines against OCF, Wright, Robinson, and Hines on August 12, and then reimposed the same fines against them under the substitute orders. To determine if the substitute orders are nothing more than the same amended sanctions order, we compare the two.

In the amended sanctions order, Judge Caldwell made seven findings of fact:

(1) He adopted, ratified, and confirmed the report and recommendations on sanctions by the master.

(2) He found OCF had "abused the discovery process," the court, and the plaintiffs.

(3) He found that such abuse amounted to an obstruction of justice.

(4) He found that OCF should be sanctioned for its abuses.

(5) & (6) He found that Wright, Robinson and Hines had submitted themselves to the jurisdiction of the court and the disciplinary processes of Texas.

(7) He found that Wright, Robinson and Hines had actively "abused the discovery process and obstructed the judicial process" and should be sanctioned.

In the substitute orders, Judge Caldwell found that the above findings contained in the amended sanctions order "were not overturned on review and are in full force and effect." Additionally, Judge Caldwell made the following findings and conclusions of law:

(1) A trial court is authorized to enter monetary sanctions in causes where such sanctions are necessary to correct conduct that "abuses the discovery and judicial processes and constitutes an obstruction of justice."

(2) The cases before him required monetary sanctions to correct conduct "abusing the discovery and judicial processes and obstructing justice."

(3) OCF and its attorneys would not cease their "abuse of the discovery and judicial processes" without the imposition of monetary sanctions in a sufficient amount.

(4) The public records contain sufficient evidence for the court to determine that monetary sanctions in the amount imposed in the substitute orders will not substantially restrict OCF's access to the courts.

In a significant difference from the amended sanctions order, Judge Caldwell imposed the sanctions contained in the substitute orders "pursuant to Rules 13 and 215(2)(b)." However, the substitute orders contain the same language as the amended sanctions order in describing the reasons for sanctioning OCF, Wright, Robinson, and Hines. The language is "abuse of the discovery process"; this language mirrors the language in rule 215(3).

It is uncontroverted that the substitute orders issued without notice or hearing. They punish the same conduct and the same parties and impose the same sanctions as the amended sanctions order.

In our March 20 opinion, we recognized that a monetary fine was a sanction that could be imposed under rule 215(2)(b). *Owens–Corning Fiberglas Corp.*, 807 S.W.2d at 415. We also found that the amended sanctions order imposed fines for "abuse of the discovery process," and that such conduct and sanction came under rule 215(3). We held that Judge Caldwell had no authority to assess monetary fines against OCF, Wright, Robinson, and Hines under rule 215(3). *Id.* We find that the substitute orders are the same amended sanctions order, and that Judge Caldwell, rather than comply with our March 20 conditional grant of mandamus, attempted to evade it through the mechanism of the substitute orders.

*Deferral of Attorneys'–Fees Sanction Payment (cause number 01–91–00681–CV)*

OCF argues that Judge Caldwell has abused his discretion by not modifying the amended sanctions order to defer the payment of the attorneys'-fees sanction until final judgment. On June 25, 1991, and again on July 16, 1991, OCF requested Judge Caldwell to delay requiring payment of the attorneys'-fees sanction until final judgment, relying upon *Braden.* OCF does not contend that it lacks the financial ability to pay the sanction. On the contrary, it concedes its ability to pay the $320,000. However, it asserts that the amount of the sanction is so severe that it necessarily precludes access to the courts because it "chills the adversarial process and focuses resolution of the litigation upon the sanction rather than the merits of the underlying dispute." It is not necessary for us to decide whether the reasoning in *Braden* extends to those situations where a severe monetary sanction precludes access to the courts for reasons other than financial ones.

On August 12, 1991, as part of the substitute orders, Judge Caldwell ordered

> that OWENS CORNING FIBERGLAS CORPORATION shall pay to Attorneys Robert Ballard and Lawrence Madeksho $160,000 each as a reasonable attorney fee for their costs and expenses and their effort in this discovery proceeding; *and*

> *it is FURTHER ORDERED that Defendant OWENS CORNING FIBERGLAS CORPORATION shall deposit this amount into the Registry of the Court* on or before 5 p.m. o'clock on the date which is thirty (30) days from the date this ORDER is signed; provided, however, that should such Corporation raise the issue that it cannot pay these attorneys fees, it may appear on or before 10 a.m. o'clock on Tuesday, the 27th day of August, 1991, a date which is more than ten (10) days from the Date this Order is signed, before this Court in Angleton, Brazoria County, Texas, to present evidence, if any, to postpone the deposit of such attorneys fees until after entry of final judgment herein.

(Emphasis added.)

In *Braden,* the supreme court stated that when monetary sanctions were unrelated to any reasonable attorneys' fees incurred by any party, and when such sanctions were great in magnitude and payable before any opportunity for supersedeas and appeal, the possibility existed that a party's willingness or ability to continue the litigation would be significantly impaired. 811 S.W.2d at 929. In such circumstances, the supreme court announced it was adopting the procedure outlined by the Fifth Circuit in *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 882 n. 23 (5th Cir.1988). 811 S.W.2d at 929. Therefore, if a litigant contends that the sanctions preclude court access, the supreme court has stated that the trial court must either (1) provide the sanctions are payable only at a date that coincides with or follows entry of a final order terminating the litigation, or (2) after a hearing, make express written findings why the sanctions do not have a preclusive effect. *Id.*

OCF asserts, and it is uncontroverted, that the attorneys' fees sanction of $320,000 is unrelated to the attorneys' fees actually incurred by plaintiffs' counsels. We find that the $320,000 sanction, payable by a corporation to two individual attorneys, is comparable in magnitude to the $10,000 sanction Braden was ordered to pay.

■ Therefore, because OCF filed motions contending the attorneys'-fees sanction precluded its access to the court, Judge Caldwell was required to follow either of the two options specified in *Braden*. He could either change the amended sanctions order to delay payment until a date that coincides with or follows a final order terminating the litigation, or promptly hold a hearing and make express written findings why the sanctions did not preclude court access by OCF.

■ Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985, orig. proceeding). However, mandamus relief may be afforded where the trial court's order is void. *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex.1973); *Zep Mfg. Co. v. Anthony*, 752 S.W.2d 687, 689 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding). Judge Caldwell exceeded his authority when he required OCF to pay the attorneys'-fees sanction into the court registry and did not follow either of the two options laid out in *Braden*.

We express no opinion on whether the attorneys'-fees sanction was authorized or appropriate. Those issues may be raised on appeal. *See Braden*, 811 S.W.2d at 930.

*Production of "Costs of Services for Counsel" and "Reserves for Asbestos Claims Losses" Documents (cause number 01–91–00681–CV)*

■ OCF contends the documents sought by Judge Caldwell under the July 8 order have no relevance to the issue that the Texas Supreme Court has directed him to reconsider, and are protected by the attorney-client privilege. The July 8 order has been stayed by this Court; Judge Caldwell has not withdrawn it. Accordingly, the issues presented by the July 8 order are not moot.

We recognize that OCF did not follow the steps necessary to preserve its claim of attorney-client privilege. TEX.R.CIV.P. 166b(4); *see Peoples v. Fourth Court of Appeals*, 701 S.W.2d 635, 637 (Tex.1985, orig. proceeding); *see also McKinney v.*

*National Union Fire Ins. Co.*, 772 S.W.2d 72, 74–75 (Tex.1989). However, the pleading of a privilege, the holding of a hearing on the privilege motion, and any in camera inspection of the allegedly privileged documents occur in the context of the discovery process, when one party seeks documents and the other seeks to exclude them. The plaintiffs did not seek to discover the costs of services for counsel and reserves for asbestos claims losses documents of OCF; Judge Caldwell did. For OCF to present documents it claimed as privileged to Judge Caldwell for in camera inspection would have complied with the July 8 order to which OCF objected.

■ Judge Caldwell stated he needed the cost of services for counsel and reserves for asbestos claims losses documents in order to make the findings required by *Braden* for deferral of sanction payment. As we held above, Judge Caldwell exceeded his authority by failing to comply with one of the two options offered by *Braden*. He also exceeded his authority in requiring OCF to produce these documents for in camera inspection. Judge Caldwell could make express written findings why the sanctions did or did not preclude court access by OCF only after a hearing, not after an in camera examination of documents. The logic of *Braden* requires a sanctioned party claiming preclusion of court access to produce evidence and witnesses in support of its claim in order to prevail. *See Braden*, 811 S.W.2d at 929. It does not authorize the judge to compel production of the evidence.

*Referral to the Master in Chancery (cause number 01–91–00681–CV)*

In the introduction to its mandamus petition, OCF contends that Judge Caldwell abused his discretion in "referring the sanctions issue to a Master in Chancery." However, in its motion to the trial court to withdraw the appointment of the master and in its argument in its petition to this Court, OCF attacks only the referral of documents under the July 8 order to a master in chancery. The July 8 order states that the documentation on the costs

of services for counsel and reserves for asbestos claims losses is to be provided to the master in chancery for review.

▬▬ Because we have held that Judge Caldwell lacked authority to issue the July 8 order, we need not determine if the referral of the documentation to the master in chancery was an abuse of discretion. If OCF is requesting us to direct Judge Caldwell to refer no further sanctions issues to a master in chancery, we decline to do so. Mandamus will not lie to compel future acts. *Houston Chronicle Publishing Co. v. Dean,* 792 S.W.2d 273, 274 (Tex.App.— Houston [1st Dist.] 1990, orig. proceeding).

*Relief*

Two motions are presently pending in this Court relating to these two mandamus proceedings, which we dispose of as follows:

1. We grant Judge Caldwell's motion for leave to file a postsubmission response.

2. We grant the motion of OCF, Wright, Robinson, and Hines, filed in connection with our cause numbers 01–91–00058–CV and 01–91–00068–CV, to issue a writ of mandamus directing Judge Caldwell to comply with this Court's opinion of March 20, 1991.

We hereby grant the following relief in these two mandamus proceedings:

1. We issue writ of mandamus in cause number 01–91–00748–CV as it relates to the reimposition of the monetary fines, and order Judge Caldwell to vacate on or before December 12, 1991 that portion of his August 12, 1991, order designated as the substitute orders, except for paragraphs five, six, seven, and eight on pages four through five. Judge Caldwell's vacating of the monetary fines set forth in his January 11, 1991, order (the amended sanctions order), which was also accomplished by his August 12 order, remains undisturbed. We also order Judge Caldwell to file in this Court, in cause numbers 01–91–00058–CV and 01–91–00068–CV, a certified copy of the order vacating the substitute orders as detailed herein at or before 5:00 p.m., on

December 2, 1991. Should Judge Caldwell fail to comply with this writ of mandamus at or before 5:00 p.m., on December 2, 1991, he is ordered to appear before this Court at 9:00 a.m., on December 11, 1991, and show cause why he should not be held in contempt of this Court for failure to comply with this writ of mandamus.

2. We conditionally grant the writ of mandamus in cause numbers 01–91–00681–CV and 01–91–00748–CV insofar as they challenge the payment of the attorneys'-fees sanction into the trial court registry. We order Judge Caldwell to vacate (i) those portions of paragraphs five, six, and seven on page four of his August 12, 1991, order designated as the substitute orders to the extent they require OCF to pay the attorneys'-fees sanction into the registry, and (ii) that portion of the amended sanctions order of January 11, 1991 that requires OCF to pay the attorneys'-fees sanction within 30 days. Because Judge Caldwell's order to pay the sanction money into the court registry and to pay such sums from the registry to the plaintiffs upon final judgment in the underlying causes shows his intent to follow the first option under *Braden,* we direct him to provide in the substitute orders and the amended sanctions order that the attorneys'-fees sanction be payable only at a date that coincides with or follows entry of a final order terminating the underlying causes. Tex.R.App.P. 1(a), 80(c). We are confident that Judge Caldwell will act in accordance with this paragraph. The writ will issue only in the event he fails to comply.

3. We conditionally grant the writ of mandamus in cause number 01–91–00681–CV insofar as it challenges the July 8 order requiring OCF to produce for in camera inspection costs of services for counsel documents and reserves for asbestos claims losses documents. We order Judge Caldwell to vacate the July 8 order. We are confident that Judge Caldwell will act in accordance with this

paragraph. The writ will issue only in the event he fails to comply.

All other relief not expressly granted herein is denied.

We are aware of the supreme court's recent decision in *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749 (Tex.1991). Our order in the paragraph numbered two above should not be construed as preventing Judge Caldwell from reconsidering either the amount of the attorneys'-fees sanction or whether such sanction should be imposed at all.